# Louisville & Nashville Railroad Company v. Dixon.

### (Decided June 22, 1917.)

## Appeal from Hardin Circuit Court.

1. Railroads—Care of Platforms and Approaches.—Railroad companies are under obligation to keep in safe condition all portions of their platforms and approaches thereto, to which the public do, or would naturally resort, as well as all portions of their station grounds reasonably near to the platforms, where passengers or those who have purchased tickets with a view to take passage on their cars, would naturally or ordinarily be likely to go.

2. Railroads—Negligence.—It is per se negligence on the part of the railroad company to have an open trap door in the porch floor of the depot flush with and adjacent to the passenger depot platform.

3. Railroads—Nuisance.—Where a railroad company lays out a miniature park to the rear of its depot for the use and enjoyment of its patrons and provides one way only to reach the park and this across a porch entered through a gate at the depot platform, a passenger who steps from the platform through a gate on to the porch is not a trespasser and does not commit a nuisance by resorting to the porch for a simple act which involves an improper use of the porch.

BENJAMIN D. WARFIELD and L. A. FAUREST for appellant.

H. L. JAMES for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The appellee, Mrs. Bessie Dixon, while waiting at the station of the Louisville & Nashville Railroad Company at Elizabethtown, to become a passenger on its train to Upton, was injured by falling through a trapdoor on a porch which had been left open by appellant's servant, and she sues to recover damages for this injury. The depot platform extended along in front of the depot and next to the tracks and was made of fine crushed limestone. At one end of the depot and running at right angles with the platform was a porch, the floor of which was wood and joined flush with the platform. This porch was separated from the platform by two small wire gates which reached the entire length of the porch. One of these gates entered upon the porch proper, while the other entered the basement through a trap door in the porch floor, and this latter gate and trap door were surrounded by a little fence about three

feet square, intended to guard and protect the trap door in the floor. This porch floor and platform were flush with each other. The accident happened at night, and the train upon which Mrs. Dixon was about to take passage had sounded its whistle for the station. She at the time was in the baggage room attending to some baggage and had with her a small child. The child indicated to its mother that it desired to answer a call of nature, and she observing that the porch was dark and the premises otherwise poorly lighted, undertook to take the child on to the porch out of the presence of other persons so that she might give it attention. She had been upon this porch before, but had observed only one gate. She noticed that the gate was open and she started to enter, and in doing so, stepped into and fell through the trap door, severely injuring her in her hand, arm, back, chest and other parts of her body.

Upon a trial in the circuit court, Mrs. Dixon was awarded twenty-two hundred dollars damages, and a motion and grounds for new trial having been overruled, the railroad prosecutes this appeal.

It insists:

First. That the trial court erred in refusing to peremptorily instruct the jury to find for it.

Second. That the damages are excessive.

Third. That the court gave the jury erroneous instructions and erred in refusing instructions offered by defendant company.

The railroad company interposed a demurrer to the petition and now insists that the demurrer should have been sustained by the lower court. The defect in the petition attempted to be reached by the demurrer is, its failure, as appellant claims, to allege that she was injured while on the platform, or while attempting to use the platform or any place which the defendant company provided for the use of passengers at said station. It is true that the petition does not allege that the trap door was in the platform of the depot, but avers that it was in the porch floor of the depot, which was adjacent to and flush with the platform and "the said defendant (company) negligently and carelessly had the gate opening on to said porch, open and the cellar door immediately in front thereof, and which was flush with the porch floor, open and *unguarded* and negligently and carelessly failed to have its premises and the said porch and plat-

form lighted, and the plaintiff (Mrs. Dixon) after dark and in attempting to enter said porch stepped into said open hole and was thereby caused to fall with great force and violence. She states that the said premises of the defendant were unsafe and dangerous and in consequence thereof she was caused to fall as aforesaid.''

The petition alleges facts, showing the negligence of the company and its failure to guard the trap doors, and this considered in connection with the proximity of this dangerous hole in the porch floor to the platform and the duty the company owed to the traveling public to keep all portions of its grounds to which passengers would naturally and reasonably be expected to resort, in a reasonably safe condition, fully justified the trial court in overruling the demurrer of the appellant to the petition. However this may be, the rule is, that after verdict or judgment the pleading is liberally construed, whereas before judgment the pleading is strictly construed against the pleader. Any formal defect in pleading is deemed cured by verdict or judgment, and the pleadings here, if defective, are cured by the verdict and judgment.

It is a well-recognized rule that it is the duty of a railroad company to have and keep its depot premises, buildings and grounds to which passengers will naturally and ordinarily resort or use, in the absence of being warned not to do so, in approaching the carrier's station, in waiting for the arrival of its trains and in getting on or off the same, in reasonably safe condition. Thompson on Negligence, 3rd vol., sec. 2691, in speaking of the duties of railroad companies, says:

''The duty extends to other portions of their premises besides station platforms. Such carriers are under obligation to keep in a safe condition all portions of their platforms and approaches thereto to which the public do, or would naturally resort, as well as all portions of their station grounds, *reasonably near to the platform,* where passengers or those who have purchased tickets with a view to take passage on their cars, would naturally and ordinarily be likely to go.''

Mrs. Dixon had purchased her ticket and was waiting at the station to take passage upon the train which was then approaching. She then occupied the same attitude towards the company as a passenger and she had the right to rely upon the railroad company to properly perform the duties which it owed to passengers, to have and keep its depot grounds and premises as well as ap-

proaches thereto, in reasonably safe condition for use by persons who were passengers or waiting to become such.

The railroad company is not only under obligation to passengers and those whom it invites on to its depot premises to have and keep the depot, waiting rooms and platforms reasonably safe, but it will not be permitted or allowed to maintain dangerous pitfalls so near to its platform as to endanger the safety of those having a right to be upon such platform. and escape responsibility for the consequence.

From the evidence presented in this case the depot platform and the porch floor adjoin and are flush with each other. It, therefore, would be unreasonable to say that a passenger waiting on the platform might not by accident, or inadvertence step through an open gate on to a porch in which a trap door is located. When the premises are not well lighted such an event is not unlikely. In the darkness the trap door in the floor could not be seen. An open gate is an implied invitation to enter, and since Mrs. Dixon, who had been a passenger at this depot many times before, had entered upon the porch through a gate, it was but natural that she apprehended no danger in so doing upon this occasion.

The railroad company urgently insists that since Mrs. Dixon was entering upon the porch of the depot for the purpose of allowing her child to urinate, that she was committing a nuisance upon the premises of the railroad company, and was, therefore, a trespasser; that she had no right to go upon the porch for the purpose for which she entered, and having no right there, she must suffer the consequence of her wrongful act. In support of this contention it cites the case of Louisville & Nashville Railroad Company v. Turner, 139 Ky. 730. Turner was a passenger on the train in the yards at Corbin, Kentucky. He went to the closet on the train and found it locked, whereupon he asked the conductor to unlock it, but was informed by this official that it was against the rules of the company to unlock the closet while the train was standing at the depot. It was night time, and the conductor suggested that Turner could go on the outside of the train and attend to his needs. Turner did so, and while seeking a place fell into an open culvert close to the track on defendant's premises. This court reversed the judgment for four thousand dollars, and ordered a peremptory instruction in favor of the railroad company, because Turner at the time of his injury was not shown

to have been at a place on the premises of the railroad company at which the railroad company owed a duty to passengers to have and keep in a reasonably safe condition. The facts in the Turner case are very different from the facts in the case now under consideration. Turner wandered off into a dark place on a part of the yards of the railroad company, some distance from the depot and at a place never intended for use by passengers. Mrs. Dixon was on the platform of the depot where she had a right to be as a passenger. The hole in the porch was immediately against the platform on which she and her child were at the time. There was nothing to prevent her stepping onto the porch. The porch, she testifies, was used by passengers and she herself had been on it before. While the porch was dark she had no reason to apprehend danger from stepping on it. The gate was open. The trap door was at a place so very near the platform that the railroad company must be presumed to have anticipated that passengers would be near it. A reasonably prudent person would anticipate injurious consequences from so dangerous an open pit. Moreover, the railroad company had provided a miniature park at the rear of the depot and this porch, entered through a gate, was the only means of ingress and egress to and from this park. It is true the mail car or baggage truck was usually left upon this porch, but the whole facts considered, the jury was justified in finding from the evidence that this porch was intended for and used by the traveling public, and that the appellee, Mrs. Dixon, in entering thereon, was not a trespasser, but was within her rights. These facts were set forth with reasonable certainty in the petition, and we, therefore, consider the petition sufficient on demurrer.

While the motion and grounds for new trial did not complain of the excessiveness of the verdict, it is insisted nevertheless, that the damages are excessive. Mrs. Dixon in testifying on her own behalf, said:

"I thought I was stepping in on the porch, and I stepped off in that hole, and I had the baby on my arm, and I grabbed as I went down, I suppose I grabbed to the railing or something, I just swung my whole body back to the step. . . . Well, at the time it tore that finger there where I caught hold and tore the leaders away from that hand and bruised that hand good deal. Must have struck the step, and this hip, I struck something as I went in, and that was that one. . . . Q. Did you strike your side? A. I struck it as I went down.

I thought perhaps it struck the step or something. . . . .
Well, at the time I did not think it hurt me only my hand,
it was swollen until I could not close it when I got home,
but the next morning I was helpless and could not do
anything; I was drawn this way and felt like I was sore
all over, and my back was wrenched, and the next day I
thought I would get better, and I kept getting worse
until Monday I had to take my bed and I was in bed two
weeks. My lungs and bruised back. Q. Prior to this time
what was the condition of your health? A. All right. I
was good and stout. Q. Now after this accident, what
has been the condition? A. I have not been able to do my
work, and suffer a good deal. Q. Have you suffered any
or not? A. Yes, sir, I have. Suffered with my back and
lungs and bowels. . . . Well, I first had a hemorrhage
of the bowels. Q. The hemorrhage you had on Monday,
where was that? A. From my lungs."

Dr. Riggs, a physician of twelve years' experience,
who attended Mrs. Dixon on the occasion of her injury,
after testifying he had attended her previous to that
time on an occasion of the birth of a child, and had ob-
served no diseased condition, stated: "I first saw her
on the night of the 23rd of December or about that time,
possibly that date. . . . Well, that night, I do not re-
member, possibly a little more complaint, but all I re-
member I noticed that night was her hand skinned and a
part of this ligament on her right finger was possibly
torn."

"Q. When did you next see her? A. About two days
later if I remember right. . . . I found her coughing
constantly and a bruise on her hip and possibly below
the knee, and a consolidated place in her left lung, com-
plaining of her back and menstruating."

The doctor further testified that he continued to at-
tend Mrs. Dixon for some two months or more subsequent
to the injury and that the affected condition of her lung
and bowels was properly traceable to the injury which
she received by falling into the trap door and that the
injury which she sustained was permanent. It is evi-
dent that Mrs. Dixon suffered a very severe injury. In-
deed, she was fortunate that greater injury did not re-
sult. The facts considered, we do not regard the verdict
of twenty-two hundred dollars as excessive.

It is next insisted that the instructions given by the
trial court to the jury were erroneous. We have, how-
ever, examined the instructions and find them to be the

usual and ordinary instructions given in such cases, and fully and fairly present the law of the case. The first one told the jury "that it was the duty of the defendant company to exercise ordinary care to construct and maintain its depot, platform and approaches thereto, in a reasonably safe manner and to keep same properly lighted at all points where passengers would naturally or might ordinarily be reasonably expected to go"; that in case the railroad company failed to perform this duty, and plaintiff was injured by reason of such failure, then the verdict should be for the plaintiff, Mrs. Dixon. The second instruction covers the law of contributory negligence; the third the measure of damages, and with these we find no fault. The fourth defines negligence, and the fifth defines "ordinary care."

No prejudicial error is disclosed by the record, and the judgment must be affirmed.